IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANTHONY CALIFORNIA, INC., | |
| Plaintiff, | **8:17CV112** |
| vs. | |
| JAMES MORAN, M&M SALES, INC., and DIRECT LIGHTING, L.L.C., | **MEMORANDUM AND ORDER** |
| Defendants. | |

This matter is before the court on Plaintiff Anthony California, Inc.'s motion for issuance of a third-party subpoena to Raymour & Flanigan Furniture, ([Filing No. 39](#)), Plaintiff's motion for leave to file a reply brief, ([Filing No. 49](#)), and Defendant's objection to that motion. ([Filing No. 50](#)). For the following reasons, Plaintiff's motion for a third-party subpoena will be granted in part, Plaintiff's motion for leave will be denied, and Defendant's objection will be sustained.

BACKGROUND

Plaintiff Anthony California Inc., ("Anthony California") designs and sells lamps and accessories. ([Filing No. 1](#)). Anthony California operates its business by having multiple Chinese companies ("foreign entities") manufacture its designs, with sales representatives selling the manufactured lamps and accessories to retailers. Defendant James Moran worked as a sales representative for Anthony California, both individually[1] and through the corporate defendant M&M Sales, Inc., beginning over 20 years ago until the year 2014. ([Filing No. 1](#)).

---

[1] Defendant argues James Moran did not work for Plaintiff in an individual capacity. ([Filing No. 45 at CM/ECF p. 4](#)). However, this distinction does not affect the court's analysis of the issues contained within the current motions.

On April 3, 2017, Plaintiff filed the above-captioned action against Defendants alleging breach of contract, tortious interference with business expectations, misappropriation of trade secrets, unjust enrichment, deceptive trade practices, violations of the consumer protection act, and contributory and vicarious copyright violations. ([Filing No. 1](#)). Specifically, Plaintiff alleges Defendants conspired with the foreign entities to manufacture lamps, some of which were Anthony California designs, and to sell them directly to Plaintiff's customers. ([Filing No. 40 at CM/ECF p. 4](#)). None of the foreign entities are named as defendants in the above captioned case. Instead, Plaintiff has filed a separate lawsuit in the Central District of California against some of the foreign entities (the "California Litigation"). See Case No. 5:15-CV-00876-JGB-SP.[2]

Plaintiff states that Raymour & Flanigan Furniture ("Raymour & Flanigan") was one of Plaintiff's largest customers at the time that Defendant Moran left Plaintiff's employment. Plaintiff claims Defendants learned of Raymour & Flanigan's information through their use of Plaintiff's confidential customer information. Thereafter, Defendants allegedly interfered with Plaintiff's relationship with Raymour & Flanigan, "even taking that relationship entirely[,]" ([Filing No. 40 at CM/ECF p. 2](#)), by convincing Raymour & Flanigan to cancel purchase orders with Plaintiff and becoming the the supplier on those orders. ([Id.](#)).

The proposed third-party subpoena seeks documents from Raymour & Flanigan, relating to Defendants' and the foreign entities' sales to Raymour &

---

[2] The defendants in this matter were originally named as defendants in the California litigation but were dismissed due to lack of jurisdiction. ([Filing No. 40 at CM/ECF p. 18](#)).

Flanigan. Defendants generally object to the subpoena in its entirety but specifically argue against the following topic inclusions:

> 6. Purchase orders and/or sales invoices (or similar documents) that reflect the sale or purchase of, or offer to sell or purchase, lamp or lighting products from any of the Defendants since January 1, 2014.
>
> 7. Purchase orders and/or sales invoices (or similar documents) that reflect the sale of or purchase of, or offer to sell or purchase, lamp or lighting products from any Foreign Entities since January 1, 2014.
>
> 11. Any contracts and agreements between [Raymour & Flanigan] and any of the Defendants from January 1, 2014 to the present.
>
> 12. Any contracts and agreements between [Raymour & Flanigan] and any of the Foreign Entities from January 1, 2014 to the present.

([Filing No. 41-2 at CM/ECF pp. 12–13](#)). Plaintiff claims it needs the information requested in the contested topics to calculate damages for its claims against Defendants and to provide documentation and support for its claims.

On May 9, 2018, the undersigned magistrate judge conducted an informal hearing concerning the subpoena. During the hearing, the undersigned limited the briefing on this issue, ordering that a reply brief be filed only upon a showing of good cause. Plaintiff has filed a motion arguing that there is good cause for the filing of a reply brief, ([Filing No. 49](#)), and Defendant has objected to the motion. ([Filing No. 50](#)). The court believes that information found within the supporting and responsive briefs are sufficient for the court to find for Plaintiff. Accordingly, the court will deny Plaintiff's motion for leave to file a reply as moot and sustain defendant's objection.

ANALYSIS

Under Nebraska Civil Rule 45.1, a party may move for the issuance of a contested third-party subpoena. NECivR. 45.1. The court will issue the subpoena if the topics are within the permissible scope of discovery as outlined in the Federal Rules of Civil Procedure. The scope of permissible discovery is broad, and parties may obtain:

> discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Defendant argues that the contested topics are overly broad as exceeding the scope of claims at issue and that Plaintiff is using this discovery to improperly gain information about competitive products. (Filing No. 45 at CM/ECF p. 2). Defendant does not have standing to challenge the breadth of a third-party subpoena—a party may object to a third-party subpoena only on grounds of relevance or to protect a personal right. Streck, Inc. v. Research & Diagnostic Sys., 8:06CV4582009, 2009 WL 1562851 (D. Neb. June 1, 2009).

Relevancy, for the purposes of discovery, includes "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340,

351 (1978). While relevance is to be broadly construed for discovery issues, the movant must make a showing of relevance, beyond mere speculation, before the court will allow widespread discovery. Zurich American Insurance Co. v. Andrew, No. 8:15CV403, 2016 WL 2350115, at *2 (D. Neb. May 4, 2016).

During the informal hearing on May 9, the undersigned suggested narrowing topics 6, 7, 11, and 12 by tailoring the subpoena to concern sales of products similar to Plaintiff's own designs. Plaintiff did not agree the proposed narrowing, arguing the relevancy of the subpoena requests goes beyond the copyrighted items and the copyright claims. Instead, Plaintiff argues that both the defendants' and foreign entities' sales and orders to Raymour & Flanigan are relevant to damages on Plaintiff's other claims, including Plaintiff's tortious interference, breach of contract, and unjust enrichment claims.

Plaintiff's complaint alleges Defendants used Plaintiff's confidential sales information to acquire Raymour & Flanigan's business, take Plaintiff's place on purchase orders and sales, and essentially 'steal' Plaintiff's customer relationship with Raymour & Flanigan.[3] These allegations form the basis of many of Plaintiff's claims, including its claims for tortious interference, unjust enrichment, and misappropriation of trade. (See Filing No. 1). Lost profits, loss of value in one's business, and defendant's gain are appropriate measures and considerations for determining Plaintiff's damages if these claims are successful. See West Plains, L.L.C. v. Retzlaff Grain Co. Inc., Case No. 8:13CV47, 2016 WL 165698, at *3 (D. Neb. Jan. 13, 2016); Trieweiler v. Sears, 689 N.W.2d 807, 834 (2004); Lamb v. ITT Corp., Case No. 8:09CV95, 2010 WL 376858, at *6 (D. Neb. Jan. 26, 2010)

---

[3] Plaintiff claims that the sales Defendants made to Raymour & Flanigan "could have, and would have, been made by Plaintiff if not for Defendant's improper actions." (Filing No. 40 at CM/ECF p. 5).

5

(citing Ahrens v. Dye, 302 N.W.2d 682, 684 (1981)). Accordingly, the court finds that sales and purchase orders made by Raymour & Flanigan are relevant to Plaintiff's potential calculation of damages.

Defendant argues topics 7 and 12 are irrelevant to this lawsuit because they do not concern Raymour & Flanigan's relationship with Defendants but with the foreign entities who are part of the California litigation. Nevertheless, Plaintiff's complaint alleges the foreign entities' sales to Raymour & Flanigan were facilitated by Defendants' alleged misuse of Plaintiff's confidential pricing and supply information. Based on this allegation, the court finds Raymour & Flanigan's sales to the foreign entities may be considered part of the gain obtained through the wrongful use of Plaintiff's confidential information. Topics 7 and 12 are therefore relevant to issues that may arise in this case.

In addition to being relevant to Plaintiff's potential damages, topics 6, 7, 11, and 12 are also relevant to issues of liability. Plaintiff claims defendants used its knowledge of Plaintiff's prior dealings with Raymour & Flanigan, including Raymour & Flanigan's customer preferences, inventory, and order history with Plaintiff to take over Plaintiff's sales orders and customer relationship with Raymour & Flanigan. Accordingly, the contested subpoena topics may bear on these claims by showing whether the defendants' and foreign entities' sales to Raymour & Flanigan indicate any use of that knowledge.

In opposition to Plaintiff's arguments, Defendants argue that if Plaintiff's theories are accurate, Defendants would never be allowed to compete for the business of Raymour & Flanigan without turning over their profits to Plaintiff. Defendants argue that allowing such damages would violate basic public policy by operating as an unlawful restraint of trade.

The court agrees. Even if Defendant is ultimately found liable on all Plaintiff's claims, a line must be drawn between Defendant's gain attributable to alleged misconduct and gain Defendant earned after securing the trust and goodwill of Raymour & Flanigan's business. Under Nebraska law "ordinary competition" and "unfair competition" are distinguished through

> focus[ing] on an employee's opportunity to appropriate the employer's goodwill by initiating personal contacts with the employer's customers. Where an employee has substantial personal contacts with the employer's customers, develops goodwill with such customers, and siphons away the goodwill under circumstances where the goodwill properly belongs to the employer, the employee's resultant competition is unfair and the employer has a legitimate need for protection against the employee's competition.

Gaver v. Schneider's O.K. Tire Co., 856 N.W.2d 121, 131 (Neb. 2014).

In the instant case, Defendants were not the sales representatives for Raymour & Flanigan and therefore lacked a significant opportunity to appropriate Anthony California's goodwill with Raymour & Flanigan through direct personal contacts. (Filing No. 45 at CM/ECF p. 7). Instead, Defendants had to build their own relationship and goodwill with Raymour & Flanigan, and to the extent that was done without Plaintiff's confidential customer information, Defendants' resulting success would be construed as arising from fair competition.

The undersigned believes that permitting damages spanning through numerous years after the misconduct would be tantamount to creating a per se noncompete and restraint on trade and fair competition. Therefore, although the undersigned agrees that the contested subpoena topics are relevant, they are only relevant for the first couple years following the misconduct. The subpoena will be limited accordingly.

7

The parties have agreed on, and the court has subsequently entered, a protective order in this case, (Filing Nos. 47 & 48). Moreover, Plaintiff is willing to have Raymour & Flanigan produce the documents as "Attorneys' Eyes Only" until the parties are able to review and challenge those designations as needed. The court will order the parties to do so.

Finally, it is concerned that Plaintiff is relying on information gained through discovery in the California Litigation while withholding that discovery from Defendants in this action. For example, in her affidavit, Anthony California President, Cindy Chang, states "Plaintiff has information obtained from Donald Kruczek in the related California lawsuit showing that Raymour & Flanigan cancelled purchase orders with Plaintiff and gave those purchase orders to Moran." (Filing No. 41-1 at CM/ECF p. 4). And Plaintiff relies on this information in its argument on the current motion. Defendants claim they have submitted multiple discovery requests to Plaintiff for this information and have been "denied access to all of it on the basis that the information is 'not relevant in the instant litigation and not proportionate to the needs of this case.'" (Filing No. 45 at CM/ECF 2).

Upon a cursory review, it appears to the undersigned that such information <u>is</u> relevant to the instant litigation, as evidenced by Plaintiff's use of such information to support its own discovery requests.

IT IS ORDERED:

1) Plaintiff's motion for issuance of a third-party subpoena, (Filing No. 39), is granted in part and denied in part—

a. Topics 6, 7, 11 & 12 will be limited to the years 2014 to 2016.

   b. Documents will be produced as "Attorneys' Eyes Only" and in accordance with case protective order until the parties are able to review and challenge those designations as needed.

2) Plaintiff's motion for leave to file a reply brief, ([Filing No. 49](Filing No. 49)), is denied.

3) Defendant's objection to Plaintiff's motion for leave, ([Filing No. 50](Filing No. 50)), is granted.

August 22, 2018.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge